**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 21-cr-00069-1 |
| OMARION FRANKLIN, | Judge Franklin U. Valderrama |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

In July 2020, two individuals were sitting in a 2007 Infiniti that was parked in the parking garage of Old Orchard mall in Skokie, Illinois. Two offenders ("Offender One" and "Offender Two") ordered the two individuals ("Victim One" and "Victim Two") out of the car and fled from the scene in the stolen Infiniti. Victim One and Victim Two shortly thereafter notified law enforcement of the robbery, giving a description of the offenders. After a car chase with law enforcement, Offenders One and Two crashed the stolen car and escaped on foot. Defendant Omarion Franklin (Franklin) was arrested as one of two suspects in the armed robbery. Later that evening, Victims One and Two identified Franklin from a photo array of six other black men as Offender One. Franklin moves the Court to suppress the photo array identification as unnecessarily suggestive and likely to cause irreparable misidentification. For the reasons below, the Court denies Franklin's motion to suppress.

## Background

On July 12, 2020, at approximately 6:30 p.m., Victim One and Victim Two were seated in a 2007 Infiniti G35x in the parking garage of Old Orchard mall in Skokie, Illinois, when they were approached by Offender One and Offender Two. R.[1] 44, Resp. at 1. Offender One opened the driver side door of the car and pointed a handgun at Victim One who was sitting in the driver's seat. *Id*. Franklin is alleged to be Offender One. R. 43, Motion to Suppress (Motion) at 1. Offender One then ordered Victim One to get out of the car and to give Offender One his valuables. Resp. at 1. ("Victim Two heard Offender One instruct Victim One to give him his phone and keys. According to Victim One, after Offender One opened the driver's side door, Offender One told Victim One to get out the car and 'give me everything.'") (Internal citations omitted). Offender Two then opened the passenger side door where Victim Two was seated, and aimed a handgun at Victim Two. *Id*. Offender Two demanded that Victim Two get out of the car and give him his keys. *Id*. at 1–2. Victim Two complied. *Id*. at 2. Offender Two was later identified as Adrian Ballard. *Id*. After Offender One pulled Victim One out of the car, Offenders One and Two left the parking garage driving the Infiniti. *Id*. The Skokie Police were called, and officers were dispatched to the scene at approximately 6:37 p.m. *Id*.

When they arrived at the scene, Skokie Police interviewed Victims One and Two about the robbery. *Id*. "Victim Two described Offender One [Franklin] as a skinny black man, approximately 6'0" – 6'2", wearing a red and black baseball hat, a

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

light colored surgical-type mask and yellow hoody with a 'Timberland' logo on the front." *Id.* at 2–3. Victim One agreed with Victim Two's description of Offender One. *Id.* at 3. "Victims One and Two described Offender Two [Ballard] as a black male, approximately 5'10" – 5'11," wearing a dark baseball hat, a light colored surgical-type mask and a black hoodie." *Id.*

At approximately 6:42 p.m., the officers radioed out the description of the Offenders and the stolen Infiniti to other patrol officers. *Id.* at 4. Approximately one minute later, an officer observed the stolen Infiniti proceeding southbound on the Edens Expressway near the Touhy exit, which is approximately five miles from the scene of the carjacking at Old Orchard mall. *Id.* The officers began to pursue the Infiniti. *Id.* The Infiniti eventually crashed on a sidewalk at approximately 4155 West Byron Street in Chicago, Illinois. *Id.* The pursuing officers saw "a black man wearing a red hat and tan top run from the driver's seat of the stolen Infiniti" *Id.* Police officers searched the surrounding area looking for Offender One and Offender Two. *Id.* at 5. Offender Two was observed by one officer hopping a fence in the backyard at 3853 North Keeler and then running westbound across the 3800 block of North Keeler. *Id.* Later another officer found Offender Two, Adrian Ballard, hiding in nearby foliage. *Id.* Ballard was taken into custody. *Id.*

Two witnesses identified a black man, of approximately 6'0" to 6'2", wearing a tan shirt and red baseball hat, matching the description of Offender One, running across the yard of 3833 North Keeler. *Id.* A disposable mask was recovered from the side of the yard that day, and a "gold Timberland hoodie, with an Infiniti key fob

3

inside, and a red baseball hat with black lettering" were recovered from the backyard of 3807 North Tripp Avenue the next day by an evidence technician. *Id.* at 5–6. The evidence technician also swabbed for DNA samples from the recovered Infiniti on the day of the carjacking. *Id.* at 7.

Approximately an hour and a half later at the police station, Victim Two reiterated his description of Offender One. *Id.* at 3. Victim Two added that Offender One was "lankier" or "taller" than Offender Two; and that Offender Two "had a medium build body and a rounder face." *Id.* Victim Two explained to officers that Victim Two had gotten a "pretty good look" at the offenders and could tell the offenders by their eyes and body shapes. *Id.* Both Victim One and Victim Two stated that they could identify Offenders One and Two in a photographic lineup and agreed to do so. *Id.* at 3–4. The detective created two photo arrays based on Victim One and Victim Two's description of Offender One. *Id.* Each photo array included a photograph of Franklin and five other black men. *Id.* at 10. The detective used the same six photos, rotating the positioning of the photographs in each array. *Id.* "The presentation of the photographic arrays to each victim was video recorded." *Id.* Victim One, after two minutes, was unable to identify any individual in the photo array as Offender One. *Id.* at 11. Victim Two, after 30 seconds, identified a photo of Franklin as Offender One, and wrote a statement in support of his identification. *Id.* at 12–13.

Chicago Police arrested Franklin at his residence in Chicago, Illinois later that evening. *Id.* at 13. "Pursuant to a search warrant authorized by a Cook County Judge, law enforcement collected buccal swab samples from Franklin for the purpose of

4

conducting a DNA comparison." *Id*. The Northeastern Illinois Regional Crime lab determined that the DNA recovered from the steering wheel and gear shift of the stolen Infiniti, the face mask recovered from 3833 North Keeler, and the red hat recovered from 3807 North Tripp matched or likely originated from Franklin's DNA. *Id*. at 13–14. Franklin was charged with aggravated taking of a motor vehicle under U.S.C. § 2119 and 2. Motion at 1. Franklin's fully briefed Motion is before the Court.[2]

## Legal Standard

"The Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality." *Alexander v. City of South Bend,* 433 F.3d 550, 555 (7th Cir. 2006). The Constitution, however, does "guarantee the right to a fair trial—in this context, via the due process clause of the Fourteenth Amendment—and that right is violated if unduly suggestive identification techniques are allowed to taint the trial." *Id*. Put simply, "due process forbids law enforcement from using an identification procedure that is both suggestive and unnecessary." *United States v. Jones*, 872 F.3d 483, 490 (7th Cir. 2017) (cleaned up[3]). To ascertain whether a specific identification procedure offends due process, a court must consider whether the defendant has established that the procedure was both suggestive and unnecessary and, if so, a court then evaluates the 'totality of the circumstances' to "determine whether other indicia of reliability outweigh the corrupting effect of law

---

[2] Franklin did not file a reply brief.

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

enforcement suggestion, " *id.* at 490–91, thus "rendering the evidence admissible and leaving it to the jury ultimately to determine its worth." *United States v. Gonzalez*, 863 F.3d 576, 586 (7th Cir. 2017). "In considering whether an identification made in suggestive circumstances is still reliable, courts consider: the opportunity of the witness to view the offender at the time of the crime; the witness' degree of attention; the accuracy of the prior description of the offender; the level of certainty exhibited at the confrontation; and the length of time between the crime and the confrontation." *Id.*

Suppression is proper "only when there is a very substantial likelihood of irreparable misidentification" *Jones*, 872 F.3d at 490 (cleaned up). Irreparable means that "the procedures of trial would not suffice to allow jurors to separate reliable from mistaken identifications." *United States v. Johnson*, 745 F.3d 227, 229 (7th Cir. 2014). Otherwise, the "Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). Therefore, "juries are assigned the task of determining the reliability of the evidence presented at trial." *Id.* Whether an identification in a photo array is reliable is a mixed question of law and fact; however, "whether the composition of the photo array was impermissibly suggestive is a question of law." *United States v. Johnson*, 986 F.2d 1425 (7th Cir. 1993).

6

Franklin does not ask the Court for an evidentiary hearing. No matter, as the Court finds that an evidentiary hearing is unnecessary because Franklin does not argue that material facts are in dispute. *See United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). Therefore, the Court will resolve the motion on the briefs.

## Analysis

Franklin moves the Court to suppress the July 12, 2020, photo identification of Franklin by Victim Two because the photo array was unnecessarily suggestive, thereby violating Franklin's Due Process right. Motion at 1. As best the Court can discern regarding prong one, Franklin argues that because "he was the only light skinned African American in the array," it was unnecessarily suggestive. *Id*. at 5. The Government counters that Franklin's lone argument misses the mark because "variances in skin tone do not make the photographic array impermissibly suggestive." *Id*. at 17–18 (citing *United States v. Johnson,* 745 F.3d 227, 230 (7th Cir. 2014)). The Government further argues that the mere fact that Victim One was unable to identify Franklin as Offender One supports that the photo array was not suggestive. Resp. at 17. The Government points to the recorded photo identifications of both Victims One and Two, photographs taken of the recovered clothing, as well as the police report and police officer identifications in support of its arguments. Resp. at Exhs. A–W. The Court agrees with the Government.



It is well settled that a photo array does not need to be, and likely could not be, a collection of people with the same measurements, features, and even clothing as one another. *United States v. Johnson*, 745 F.3d 227, 230 (7th Cir. 2014) ("It's impossible to find photos of persons who are identical to a suspect . . . and also undesirable, because then the witness wouldn't be able to identify the suspect.") (cleaned up). Here, the photo array contains photos of six African American men, who appear to be approximately the same age. Because only the head, neck and shoulders of each man is visible in the photo array, there is no clear indication that the men have differing physical builds. Each man in the photo array has short or very short

8

hair, and no visible facial hair or tattoos. As the Government points out, the fact that Victim One "could not identify the defendant from the photo array . . . is some evidence that the array was not suggestive." *United States v. Ford*, 683 F.3d 761, 766 (7th Cir. 2012) (cleaned up). At bottom, Franklin's sole argument that the photo array was suggestive is that law enforcement highlighted his presence by creating a photographic array in which he was the only light skinned African American in the array. Motion at 3. The Seventh Circuit, however, has held that skin tone is not enough to deem a photo array as unnecessarily suggestive. *Johnson*, 745 F.3d at 230 ("Johnson's lawyer observes that the men have different skin coloration, but that is inevitable in any array or sequence of photos—just as it is inevitable that the facial hair, ear sizes, and chin shapes will not be identical.").

To the extent Franklin contends that he was included in the photo array because he was suspected of being an associate of Ballard, Motion at 5, that argument is undeveloped and therefore, waived. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). In short, Franklin has failed to show that the photo array was unnecessarily suggestive.

Even if this Court were to find that the photo array was unnecessarily suggestive, and thus satisfied the first prong of the analysis, Franklin has not shown that the photo array created a "very substantial likelihood of irreparable misidentification." *Jones*, 872 F.3d at 490. Franklin advances three arguments regarding this second prong: (1) the carjacking placed Victims One and Two under

9

extreme stress which affected their perception of Offender One, (2) the time period of the robbery was extremely short, and thereby affected Victim Two's perception of Offender One; and (3) the photo array was created based on Victim Two's description of Offender One's clothing, but Victim Two was not in a position to properly see Offender One. Motion at 4.

To ascertain whether there is a substantial likelihood of irreparable misidentification, the Court considers "(1) the witness' opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty that the witness demonstrated at the time of the [identification], and (5) the time elapsed between the crime and the [identification]." *United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002). The Court addresses these factors in turn.

      a.     *Opportunity to Observe*

First, the Court assesses Victim Two's opportunity to view Offender One at the time of the carjacking. Victim Two was seated in the passenger seat next to Victim One who was sitting in the driver's seat when Offender One opened the driver's door. Franklin argues that the "period of time was extremely short," for Victim One and Two to observe Offender One. Motion at 4. The Government counters that "Offender One was standing at the driver's door of the Infiniti, a short distance of approximately no more than a car's width apart from each other." Resp. at 20. The Government posits that the interaction was long enough for Victim Two to "recall that his process took long enough that one of the offenders, while waiting for the other offender, told

10

him to 'hurry up.'" *Id*. (cleaned up). The Court agrees. Victim Two, who was within a few feet of Offender One at the time of the carjacking, had a "reasonable opportunity to view and interact with the [two] offenders they identified," *United States v. Dortch*, 342 F.Supp.3d 810, 816 (N.D. Ill. 2018). There is no evidence before the Court that Victim Two's sightline to Offender One (Franklin) was obstructed. Nor is there any evidence that Victim Two's attention was diverted. The Court finds that this factor supports the reliability of Victim Two's identification.

    b.    *Degree of Attention*

Next, the Court considers Victim Two's degree of attention to Offender One. Franklin does not address this factor directly but maintains that the victims were under extreme stress. Motion at 4. The Government contends that because Victim Two witnessed Offender One point the gun at Victim One, "Offender One plainly had Victim Two's attention and [Victim Two] provided a detailed description." Resp. at 22. The Government points to Victim Two's statement that he "observed Offender One 'while he pointed the gun at us.'" *Id*. The Court agrees with the Government that Victim Two would have had a high degree of attention to Offender One when Offender One pointed the gun at Victim One, even when under the stress of the robbery. The fact that Victim Two confidently and accurately described the clothing recovered shows that Victim Two's stress did not affect Victim Two's degree of attention. The Court finds this factor supports the reliability of Victim Two's identification.

    c.    *Accuracy of Identification*

11

The next factor considered is the accuracy of Victim Two's identification. The accuracy of a witness's description of an offender speaks to the reliability of the witness's identification. *United States v. Gonzalez*, 863 F.3d 576, 586 (7th Cir. 2017) ("Her description was remarkably close given the brief length of the incident and the stressful circumstances . . ..") (cleaned up). Again, Franklin does not address this factor. The Government argues that Victim Two's description of Offender One accurately described the articles of clothing recovered from 3833 North Keeler and 3807 North Tripp, including the yellow "Timberland" hoodie, red and black baseball hat, and light-colored surgical mask. Resp. at 23. Additionally, Victim Two's description was consistent with the descriptions of the two witnesses who saw a man believed to be Offender One running through the yard at 3833 North Keeler. Resp. at 5. The Court finds that Victim Two's description of Offender One was "remarkably close given the brief length of the incident and the stressful circumstances." *Gonzalez*, 863 F.3d at 586. Therefore, this factor supports the reliability of Victim Two's identification.

    d.    *Level of Certainty*

Next, the Court assesses Victim Two's level of certainty at the time of the photo array identification. Franklin does not address this factor. The Government argues that Victim Two "exhibited a high level of certainty at the time of the identification" when Victim Two identified Franklin as Offender One after thirty seconds of looking at the photo array and said, "it's this guy," circling the photo of Franklin. Resp. at 23. Victim Two quickly and confidently indicated Franklin as Offender One in the photo

12

array. *Gonzales*, 863 F.3d at 586 ("She confidently identified Gonzalez only two days after the robbery, and within twenty seconds of first seeing the photo array."). The Court agrees that Victim Two demonstrated a high level of certainty here. Therefore, this factor supports the reliability of Victim Two's identification.

    e.    *Lapse of Time*

Lastly, the Court considers the time elapsed between the carjacking and the photo array. Franklin does not address this factor. The Government argues that the time elapsed between the carjacking and the photo array was less than three hours and therefore did not affect Victim Two's ability to identify Franklin in the photo array. Resp. at 24. The Seventh Circuit, according to the Government, has found longer passages of time as not affecting the reliability of the photo array identification. *Id.* (citing *United States v. Gonzalez*, 863 F.3d 576, 586–87, (7th Cir. 2017) (two days) and *United States v. Trager*, 289 F.3d 461, 474 (7th Cir. 2002) (three weeks)). Here, the time elapsed time between the description given at the scene of the crime and the photo array identification was short, a mere three hours. This factor supports the reliability of Victim Two's identification.

All in all, the Court finds that the use of the photographic array did not create a substantial likelihood of misidentification.

## Conclusion

For the foregoing reasons, Franklin's motion to suppress [43] is denied.

Dated: September 6, 2023

                                                   United States District Judge
                                                   Franklin U. Valderrama